FILED
2026 Sep-01 PM 03:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | | |
|---|---|---|
| MICHAEL A. FIKES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-01444-NAD |
| | ) | |
| SOCIAL SECURITY ADMINISTRATION, COMMISSIONER, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER REVERSING AND REMANDING THE DECISION OF THE COMMISSIONER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Michael A. Fikes filed for review of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner") on his claim for continued disability benefits. Doc. 1. Plaintiff Fikes was found eligible for disability benefits in January 2020 (Doc. 9-4 at 2–15), but on July 7, 2024, the Commissioner issued a final decision finding that Fikes no longer was disabled as of April 15, 2022 (Doc. 9-3 at 2–6, 8–27). In this appeal, the parties consented to magistrate judge jurisdiction. Doc. 12; 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

After careful consideration of the parties' submissions, the relevant law, and the record as a whole, the court **REVERSES** and **REMANDS** the Commissioner's decision.

## ISSUES FOR REVIEW

In this appeal, Fikes argues that the court should reverse the Commissioner's decision for three reasons: (1) the Administrative Law Judge (ALJ) erred in application of the continuing disability review evaluation process, in part by failing to compare evidence of Fikes' condition in January 2020 with evidence of his condition in April 2022; (2) the ALJ erred in consideration of medical opinions; and (3) the ALJ's decision was not supported by substantial evidence. Doc. 13.

Because the court will reverse and remand based on the ALJ's failure to adequately compare evidence of Fikes' condition in April 2022—the relevant point in time for the ALJ's decision—with evidence of his condition at the time of the comparison point decision awarding benefits in January 2020, the court need not reach the merits of the other issues that Fikes has raised in this appeal.

## STATUTORY AND REGULATORY FRAMEWORK

When applying for Social Security disability benefits, a claimant bears the burden of proving disability. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). To qualify for disability benefits, a claimant must show disability, which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1505.

A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Social Security Administration (SSA) reviews an application for disability benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1)–(4).

When an initial claim for disability benefits reaches an ALJ as part of the administrative process, the ALJ follows a five-step sequential analysis to determine whether the claimant is disabled. The ALJ must determine the following:

(1) whether the claimant is engaged in substantial gainful activity;

(2) if not, whether the claimant has a severe impairment or combination of impairments;

(3) if so, whether that impairment or combination of impairments meets or equals any "Listing of Impairments" in the Social Security regulations;

(4) if not, whether the claimant can perform his past relevant work in light of his "residual functional capacity" or "RFC"; and,

(5) if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy.

20 C.F.R. § 416.920(a)(4); *see Winschel v. Commissioner of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

But when the issue is the continuation (or cessation) of previously granted disability benefits, an ALJ must follow a different evaluation process to determine whether a claimant's disability benefits should continue. *See* 20 C.F.R. § 416.994. After an individual successfully applies for and is awarded Social Security benefits, the Commissioner periodically evaluates whether continuing benefits are warranted. 20 C.F.R. § 416.994. The Commissioner may terminate a claimant's benefits if substantial evidence demonstrates that the physical or mental impairment for which benefits were initially provided has ceased, does not exist, or no longer is disabling. 42 U.S.C. § 423(f).

In this regard, the Commissioner has established a seven-step sequential evaluation process for determining whether a claimant's disability has ended. 20 C.F.R. § 416.994(b)(5). This seven-step continuing disability review process is similar to the five-step sequential evaluation process used for initial claims for benefits, with additional attention paid to whether there has been "medical improvement." *See* 20 C.F.R. §§ 416.920, 416.994(b)(5). The ALJ must determine the following:

(1) whether the claimant has an impairment or combination of impairments which meets or equals a listing;

(2) if impairments do not meet a listing, whether there has been medical improvement;

(3) if there has been improvement, whether the improvement is related to the claimant's ability to do work;

> (4) if there is improvement related to the claimant's ability to do work, whether an exception to medical improvement applies;
>
> (5) if medical improvement is related to the claimant's ability to do work, or if one of the first groups of exceptions to medical improvement applies, whether the claimant has a severe impairment;
>
> (6) if the claimant has a severe impairment, whether the claimant can perform past relevant work; and,
>
> (7) if the claimant cannot perform past relevant work, whether the claimant can perform other work.

20 C.F.R. § 416.994(b)(5).

Medical improvement is a "decrease in the medical severity" of impairments that were present when the Commissioner last determined that the recipient was disabled or continued to be disabled; "[a] determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs, and/or laboratory findings associated with [the claimant's] impairment(s)." 20 C.F.R. § 416.994(b)(1)(i); *see Freeman v. Heckler*, 739 F.2d 565, 566 (11th Cir. 1984); *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984). The ALJ must determine that there has been medical improvement before then proceeding with the remaining steps of the evaluation process. *See* 20 C.F.R. § 416.994(b)(5)(2).

Importantly, the Eleventh Circuit has conclusively established that "the Commissioner must compare the medical evidence supporting the most recent final

decision holding that the claimant is disabled with new medical evidence." *Gombash v. Commissioner, Soc. Sec. Admin.*, 566 F. App'x 857, 859 (11th Cir. 2014) (citing *McAulay v. Heckler*, 749 F.2d 1500, 1500 (11th Cir. 1985) ("[T]his court has held that a comparison of the original medical evidence and the new medical evidence is necessary to make a finding of improvement.")).

The comparison of "old" and "new" evidence must include more than "specifically referr[ing] to the original medical evidence." *Freeman*, 739 F.2d at 566. Instead, the ALJ must "actually compare the old and new evidence," without "treat[ing] the case as though it were an original application for benefits." *Id.*

In other words, "[t]o terminate benefits, the Commissioner may not focus only on new evidence concerning disability, but must also evaluate the evidence upon which the claimant was originally found to be disabled." *Gombash*, 566 F. App'x at 859 (citing *Vaughn*, 727 F.2d at 1043). "Without a comparison of the old and new evidence, there can be no adequate finding of improvement." *Id.* (citing *Vaughn*, 727 F.2d at 1043).

## STANDARD OF REVIEW

The federal courts have only a limited role in reviewing a plaintiff's claim under the Social Security Act. The court reviews the Commissioner's decision to determine whether "it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).

**A.** With respect to fact issues, pursuant to 42 U.S.C. § 405(g), the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).

In evaluating whether substantial evidence supports the Commissioner's decision, a district court may not "decide the facts anew, reweigh the evidence," or substitute its own judgment for that of the Commissioner. *Winschel*, 631 F.3d at 1178 (citation and quotation marks omitted); *see Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (similar). If the ALJ's decision is supported by substantial evidence, the court must affirm, "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford*, 363 F.3d at 1158 (quoting *Martin*, 894 F.2d at 1529).

But "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden*, 672 F.2d at 838 (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)); *see Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

**B.** With respect to legal issues, "[n]o . . . presumption of validity attaches

to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. And the Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## PROCEDURAL BACKGROUND

### A. Initial award of benefits

On January 23, 2020, Fikes was awarded disability benefits after a finding of disability at the initial administrative level. Doc. 9-4 at 2. The finding of disability found that Fikes had been disabled since September 16, 2019, due to "intellectual disorder." Doc. 9-4 at 2. In the disability determination explanation, the adjudicator found that Fikes had medically determinable impairments of severe intellectual disorder, severe personality disorder, and non-severe depressive, bipolar and related disorders. Doc. 9-4 at 7. The adjudicator relied on a January 9, 2020 medical report from Dr. Samuel Fleming, in which Dr. Fleming noted that Fikes reported depression and anxiety, was not on any medications, was in special education in school and dropped out in tenth grade, had a history of drug use, had marginal hygiene, was cooperative, was oriented, had attention deficit, could not perform serial 7s, had deficient recall, had a general fund of information deficit, and had

deficient judgment/insight. Doc. 9-4 at 7, 11, 14. The adjudicator also relied on a 2015 examination from Dr. June Nichols that found that Fikes had an IQ of 63, low intelligence, and ADHD. Doc. 9-4 at 7. The determination noted that Fikes should keep an attention diary because he might improve if he resumed ADHD medication. Doc. 9-4 at 10, 14.

**B. Cessation of benefits proceedings**

On April 15, 2022, the Commissioner entered a decision at the initial level finding cessation of Fikes' disability. Doc. 9-4 at 16–24. A letter was sent to Fikes on April 19, 2022, notifying him of the finding of cessation. Doc. 9-5 at 3. On May 22, 2022, Fikes requested reconsideration of the initial decision finding cessation. Doc. 9-5 at 7–11.

On October 26, 2022, a hearing was held on the issue of reconsideration. Doc. 9-5 at 24. On November 30, 2022, the decision that Fikes no longer was disabled and that his benefits would cease was affirmed at the reconsideration level. Doc. 9-4 at 33–38; Doc. 9-5 at 24–31.

On January 20, 2023, Fikes requested a hearing before an ALJ. Doc. 9-5 at 37–38.

On June 13, 2023, the ALJ conducted a hearing, but the substance of the hearing was postponed so that Fikes could obtain counsel. Doc. 9-3 at 51–61. On January 18, 2024, the ALJ held another hearing telephonically, this time with Fikes

represented by counsel. Doc. 9-3 at 62–64. At the hearing, Fikes testified that he was taking medication for sleep, but not ADHD medication. Doc. 9-3 at 70. Fikes testified that he lived with his girlfriend, with whom he had lived for 12 years, and with one of his 8 children. Doc. 9-3 at 72–73. He testified that he had gotten his driver's license for the first time. Doc. 9-3 at 73. The ALJ did not question Fikes about how his condition compared to his condition in 2020. Doc. 9-3 at 69–77. Fikes testified that he had "been on benefits since [he] was a kid." Doc. 9-3 at 77. A vocational expert also provided testimony about the job prospects for an individual with Fikes' capacity for work. Doc. 9-3 at 78–84.

On June 18, 2024, the ALJ conducted a supplemental, in-person hearing. Doc. 9-3 at 44. Fikes testified at that hearing that he was having the same problems he had in 2020. Doc. 9-3 at 46.

### C. ALJ decision

On July 7, 2024, the ALJ entered an unfavorable decision on Fikes' eligibility for continued benefits. Doc. 9-3 at 8–27. The ALJ found that Fikes' "disability ended on April 15, 2022, and the claimant has not become disabled again since that date." Doc. 9-3 at 27.

In the decision, the ALJ stated that the ALJ had to follow "a seven-step evaluation process" (*see* 20 C.F.R. § 416.994). Doc. 9-3 at 11–12. The ALJ found that Fikes' comparison point decision (or "CPD," i.e., the most recent favorable

medical decision finding disability) was "a determination dated January 22, 2019." Doc. 9-3 at 11–12. However, the ALJ cited to an exhibit containing the January 23, 2020 determination finding Fikes eligible for benefits. Doc. 9-3 at 12.

The ALJ found that, at the time of the CPD, Fikes suffered from the following medically determinable impairments: borderline intellectual functioning (BIF) and ADHD. Doc. 9-3 at 13. The ALJ then found that, since April 15, 2022, Fikes had the following medically determinable impairments: BIF, personality disorder, depression, and PTSD. Doc. 9-3 at 13. The ALJ found that, since April 15, 2022, Fikes had not had an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the applicable Social Security regulations. Doc. 9-3 at 13. In making that finding, the ALJ summarized and considered only medical evidence from April 2022 and thereafter, which addressed Fikes' symptoms during that time period. Doc. 9-3 at 13–15.

The ALJ then found that "[m]edical improvement occurred on April 15, 2022," stating that "[t]he medical evidence supports a finding that, by April 15, 2022, there had been a decrease in medical severity of the impairments present at the time of the CPD." Doc. 9-3 at 16. The ALJ stated that, "[a]t the comparison point decision (CPD), it was determined that the claimant would not be able to maintain attention and concentration for periods of two hours and would be moderately impaired in all other domains . . . his full scale IQ (FSIQ) at school in

1994 was 73 versus the score obtained by June Nichols in 2015 which was 63." Doc. 9-3 at 17. The ALJ then stated that, "since that time," Fikes had obtained a driver's license, worked on cars, had friends, socialized, was living with his girlfriend and at times by himself, had eight children, and was not engaged in professional medical treatment. Doc. 9-3 at 17. The ALJ stated that, "in 2019, [Fikes'] mother relayed that he was in her care, and he was a 'special needs' child which is wholly inconsistent with the claimant's level of functioning," and noted that, "at a consultative evaluation in 2022, [Fikes] was not really able to articulate any mental health symptoms other than some reading issues." Doc. 9-3 at 17. The ALJ stated that Fikes was able to attend telehealth visits with physicians and was raising a son. Doc. 9-3 17. The ALJ then found that, "[o]verall, the claimant has demonstrated a decrease in the medical severity of his impairments, and he has experienced medical improvement." Doc. 9-3 at 17.

The ALJ found that Fikes had an updated, improved RFC because, since April 15, 2022, the impairments present at the time of the CPD "had decreased in medical severity to the point where the claimant has had the residual functional capacity to perform a full range of work at all exertional levels" with some non-exertional limitations. Doc. 9-3 at 17.

The ALJ then found that Fikes' medical improvement was related to his ability to do work "because it resulted in an increase in [Fikes'] residual functional

capacity." Doc. 9-3 at 17. The ALJ found that, "[b]ased on the impairments present at the time of the CPD, the residual functional capacity [Fikes] has had since April 15, 2022, is less restrictive" than his RFC at the time of the CPD. Doc. 9-3 at 17.

After finding that Fikes had medical improvement, the ALJ proceeded to find that Fikes still had severe impairments and non-severe impairments, and restated the finding of Fikes' updated, less restrictive RFC. Doc. 9-3 at 17–26. In considering Fikes' updated RFC, the ALJ did include a brief recitation of the disability finding in the CPD, including Fikes' WAIS scores and limitations in concentration, persistence, and pace. Doc. 9-3 at 19. However, the vast majority of the ALJ's consideration of Fikes' symptoms focused on the time after the CPD, especially regarding Fikes' activities of daily living. Doc. 9-3 at 19–22.

In determining the RFC, the ALJ noted opinions in 2015 from Dr. June Nichols and in January 2020 from Dr. Samuel Fleming, but did not include specific findings of Dr. Nichols and included only broad diagnosis and limitations from Dr. Fleming. Doc. 9-3 at 25. The ALJ noted that both opinions were addressed in the CPD and were used for comparison purposes but were not assessed for consistency and supportability. Doc. 9-3 at 23. The ALJ included no specific comparison of those opinions to the other opinions. *See* Doc. 9-3 at 19–26.

The ALJ went on to find that Fikes had no past relevant work. Doc. 9-3 at 26. But the ALJ found that, since April 15, 2022, and considering Fikes' age, education,

work experience, and updated RFC, and the testimony from the vocational expert, there were jobs in significant numbers in the national economy that Fikes could perform. Doc. 9-3 at 26–27. Accordingly, the ALJ found that Fikes' disability ended on April 15, 2022, and that Fikes had not become disabled again since that date. Doc. 9-3 at 27.

### D. Appeals Council decision

Fikes sought review from the Appeals Council of the ALJ's unfavorable decision. Doc. 9-10 at 2–25. On June 24, 2025, the Appeals Council denied Fikes' request for review. Doc. 9-3 at 2–6. Because the Appeals Council found no reason to review the ALJ's decision, the ALJ's decision became the final decision of the Commissioner.

## DISCUSSION

In this appeal (and among other things), Fikes argues that, when addressing the issue of "medical improvement," the ALJ erred by failing to compare evidence of Fikes' condition at the correct CPD (January 23, 2020) with evidence of his condition in April 2022. Doc. 13 at 12–26. Having carefully considered the record and the briefing, the court will reverse and remand because the ALJ erred as a matter of law by failing to compare the medical evidence underlying the CPD with subsequent medical evidence, which is required to assess medical improvement. Because that issue compels reversal, the court will pretermit consideration of the

other issues that Fikes raised in this appeal.

As explained above, when assessing the continuation of previously awarded disability benefits, an ALJ must apply the seven-step process in 20 C.F.R. § 416.994(b)(5), rather than the usual five-step process in 20 C.F.R. § 416.920. Thus, when assessing continuation of benefits, the ALJ must consider the additional step of "medical improvement." *See* 20 C.F.R. §§ 416.920, 416.994(b)(5). Because the assessment of medical improvement depends on whether there has been a decrease in medical severity since the last determination of disability (i.e., the CPD), and because "[a] determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, and/or laboratory findings associated with [the claimant's] impairment(s)," the ALJ is required to analyze the claimant's symptoms, signs, and laboratory findings from before the comparison point decision. *See* 20 C.F.R. § 416.994(b)(1)(i); *Freeman*, 739 F.2d at 566; *Vaughn*, 727 F.2d at 1043.

Indeed, the Eleventh Circuit has made this requirement explicit, holding that "the Commissioner must compare the medical evidence supporting the most recent final decision holding that the claimant is disabled with new medical evidence." *Gombash*, 566 F. App'x at 859 (citing *McAulay*, 749 F.2d at 1500).

In this case, the comparison point decision granting benefits was issued in January 2020 and found that Fikes was disabled due to intellectual disorder

beginning in September 2019. *See* Doc. 9-4 at 2–15. As a preliminary matter, the ALJ failed to correctly identify the CPD, instead stating twice that the CPD was from January 22, 2019—which predates the onset date of the correct CPD's finding of disability. Doc. 9-3 at 11–12. Where, as here, the ALJ does not identify the correct CPD, the Commissioner has not "compare[d] the medical evidence supporting the most recent final decision holding that the claimant is disabled with new medical evidence." *See Gombash*, 566 F. App'x at 859 (citing *McAulay*, 749 F.2d at 1500).

The Commissioner argues—relying on a citation for the generalized harmless error standard—that the misidentification of the date of the CPD is harmless. *See* Doc. 14 at 8–9. And, the Commissioner is correct that the ALJ did reference an attachment containing the correct CPD. Doc. 9-3 at 12.

But (as explained above), the Commissioner's failure "to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *See Cornelius*, 936 F.2d at 1145–46. While this court cannot "reweigh the evidence" (*see Winschel*, 631 F.3d at 1178), even if the misidentification of the CPD were harmless, the record appears to show that the ALJ still did not fulfill the requirement of considering medical improvement.

In the section of the ALJ's decision explicitly finding medical improvement, the ALJ provided a brief recounting of the findings in the CPD that Fikes could not

maintain attention for two hours and would be moderately impaired in all other domains, and noted Fikes' IQ scores in 1994 and 2015. Doc. 9-3 at 17. The ALJ then provided information about Fikes' activities of daily living and noted that—at an examination in 2022—Fikes "was not really able to articulate any mental health symptoms other than some reading issues." Doc. 9-3 at 17. The ALJ concluded that, based on that information, Fikes had "demonstrated a decrease in the medical severity of his impairments, and he has experienced medical improvement." Doc. 9-3 at 17.

In addressing the comparison point decision, the ALJ listed only Fikes' impairments and his IQ scores, without any further information regarding "symptoms, signs, and/or laboratory findings" associated with Fikes' impairments. *See* 20 C.F.R. § 416.994(b)(1)(i). Then the ALJ recounted information about Fikes' current daily activities as related to his purported level of functioning without mentioning any information about—much less changes in—his impairments or IQ. Doc. 9-3 at 17. Thus, nowhere in the medical improvement analysis did the ALJ "compare the medical evidence supporting the most recent final decision holding that the claimant is disabled with new medical evidence." *Gombash*, 566 F. App'x at 859 (citing *McAulay*, 749 F.2d at 1500). As a matter of law, the ALJ was required to consider the old and new evidence in order to properly address medical improvement before moving on with the seven-step process for assessing continuing

disability. *See* 20 C.F.R. § 416.994(b)(5)(2). The ALJ did not do so.

Nor does the remainder of the ALJ's decision—after the medical improvement determination—show anything that could constitute adequate consideration of evidence predating the January 2020 CPD. The Commissioner argues that the ALJ "discussed the evidence from the entire period of time throughout this decision." Doc. 14 at 9. And it is true that the ALJ did include some information about Fikes' condition before the CPD, including his history of drug use. Doc. 9-3 at 18. But (as explained above), an ALJ must "actually compare the old and new evidence" (*Freeman*, 739 F.2d at 566), and the ALJ here did not include anything indicating a change in Fikes' history of drug use or comparing his previous drug use to his current drug use.

Further, in the portion of the ALJ's decision addressing Fikes' new RFC, the ALJ mentioned medical opinions from Dr. Nichols and Dr. Fleming that predated the CPD along with all of the evidence that postdated the CPD; but nothing in the ALJ's decision shows meaningful consideration for the purposes of actual comparison. *See* Doc. 9-3 at 19–26. In mentioning the 2015 opinion of Dr. Nichols, and despite the ALJ stating that the ALJ "reviewed this examination for comparison purposes as it relates to the examination conducted by the same examiner" after the CPD, the ALJ stated only that it "was addressed in a prior decision and there is no evidence to merit a reevaluation of this evidence," that the passage of time had

limited the probative value of the examination, and that the evaluation "was not considered or found to be relevant for the instant claim." Doc. 9-3 at 23.

In mentioning the evaluation of Dr. Fleming, the ALJ listed diagnoses and some limitations without more, and stated that the evaluation "was part of the evidence used at the CPD to grant benefits to the claimant," such that the ALJ did not "address consistency or persuasiveness of this examination but rather [the ALJ] used that as the base to compare additional evidence obtained during this benefits review." Doc. 9-3 at 23. The Commissioner asserts that, based on this statement, "[i]n fact, the ALJ used Dr. Fleming's assessment to perform the required comparison between the evidence from the period of time in which Plaintiff was disabled and the evidence from the period of time since his disability had ended." Doc. 14 at 13. But this argument does not address—much less refute—Fikes' argument that the ALJ failed to perform the required comparison of *evidence* predating the January 2020 CPD decision and the more recent evidence. Beyond the bare statement of consideration, the ALJ's decision shows no indication of "actually compar[ing]" or evaluating the original evidence supporting disability, including "symptoms, signs, and/or laboratory findings." *See Freeman*, 739 F.2d at 566; *Gombash*, 566 F. App'x at 859; 20 C.F.R. § 416.994(b)(1)(i). Nor does anything in the treatment of the information from before the CPD show how Fikes' current condition could be considered improvement.

The ALJ's limited inclusion of evidence predating the CPD is more accurately characterized as a "specific[] refer[ence]," rather than an actual comparison. *See Freeman*, 739 F.2d at 566. Rather than showing comparison, the ALJ's decision seems to show that the ALJ treated this case more as an original application for benefits than a determination of whether there was a change in Fikes' condition. *See id.* Accordingly, the ALJ's decision shows no adequate finding of medical improvement, as required to terminate benefits. *See Gombash*, 566 F. App'x at 859.

So, while it appears that the ALJ provided a thorough review of the new evidence relating to Fikes' alleged disability, there is no comparison between old and new evidence. Without that required comparison (much less any "actual[]," *meaningful* comparison), there could be no adequate finding of medical improvement, and the case must be remanded. *See Freeman*, 739 F.2d at 566; *Gombash*, 566 F. App'x at 859.

As noted above, because the court will reverse and remand for further consideration of whether a comparison of the old and new evidence would support a finding of medical improvement, the court pretermits consideration of the other issues that Fikes raised in this appeal. The court need not—and will not—reach the other issues raised by Fikes. *See Demenech v. Secretary of Dep't of HHS*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (court need not consider other issues when remanding); *accord Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986)

(per curiam).

## CONCLUSION

For the reasons stated above (and pursuant to 42 U.S.C. § 405(g)), the Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings consistent with this memorandum opinion. The court separately will enter final judgment.

**DONE** and **ORDERED** this September 1, 2026.

**NICHOLAS A. DANELLA**
UNITED STATES MAGISTRATE JUDGE